IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| 3FORM, INC., <br><br> Plaintiff, <br><br><br> vs. <br><br><br> SUNSET PLAZA, LLC., ELITE PROPERTY MANAGEMENT, LLC., and METRO PACIFIC DEV., INC., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS <br><br><br><br><br> Case No. 2:10-CV-856 TS |

I. INTRODUCTION

Defendants, Sunset Plaza LLC (Sunset) and Elite Property Management, LLC (Elite)[1] move to dismiss because: 1) as an unlicensed contractor Plaintiff is barred from bringing suit under both California and Utah law; 2) there is no personal jurisdiction because Sunset and Elite do not have minimum contacts with Utah; and 3) venue is improper in Utah.

---

[1] A third Defendant, Metro Pacific Developments, did not join the motion and has recently been voluntarily dismissed. *See* docket No. 23.

1

The Court finds that 1) a supplier such as Plaintiff is not required to be a licensed contractor and, therefore, is not statutorily barred from filing suit; 2) this Court has personal jurisdiction over Defendants; and 3) venue is proper in Utah.

## II. BACKGROUND

Plaintiff 3Form is a Utah corporation, and Defendants are California entities.[2] On August 26, 2010, Plaintiff filed this diversity action claiming breach of a contract by failure to pay for polycarbonate panels manufactured by Plaintiff in Utah and shipped to Defendants' construction site in California.[3]

On October 4, 2010, approximately one month after this action was filed, Sunset commenced a suit against Plaintiff in the Superior Court for the State of California, County of Los Angeles, Central District (the California case).[4] On December 6, 2010, Plaintiff removed the California case to the United States District Court for the Central District of California.[5] The parties agreed to a joint stipulation to stay the California case pending the resolution of the Motion to Dismiss before this Court.[6] The stay of the California case was scheduled to end on February 12, 2011.[7]

---

[2] Amended Complaint.

[3] *Id*.

[4] Pl.'s Mem. in Supp. of Mot. for TRO.

[5] *Id*.

[6] *Id*.

[7] *Id*.

2

## III. ANALYSIS

### A. PLAINTIFF IS NOT A CONTRACTOR

Sunset and Elite contend that Plaintiff is an unlicensed contractor and that California and Utah licensing laws prevent unlicensed contractors from bringing suit to recover contractual damages for work performed if that work required a license. Plaintiff argues it is not required to be licensed as a contractor under either California or Utah law because it is a supplier.

In considering Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6):

> We accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. To survive a 12(b)(6) motion to dismiss, a plaintiff must allege that "enough factual matter, taken as true, [makes] his 'claim to relief . . . plausible on its face.'"[8]

*1. California Law*

It is undisputed that Plaintiff is not licensed in California as a contractor. Under Section 7031(a) of the California Contractors' State License Law ("CSLL") "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract."[9] Section 7026 provides that "'Contractor,' for the purpose of the section, is synonymous with

---

[8] *Jordan-Arapahoe, LLP v. Bd. of Com'rs of the Cnty. of Arapahoe, Colo.*, __ F.3d __, ___ 2011 WL 420439, *2 (Feb. 8, 2011) (quoting *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (additional citation omitted).

[9] Cal. Bus. & Prof. § 7031(a) (2010).

3

'builder.'"[10] Section 7026 then lists various acts or services which, when performed, categorize the actor as a contractor.[11] Defendants do not contend that Plaintiff was engaged in any of the listed activities that would bring Plaintiff within the definition of a "contractor." Because Plaintiff did not engage in any of these activities, there is no prima facie showing that Plaintiff is a contractor under Section 7026.

Defendants cite several cases which they claim support their argument that Plaintiff is an unlicensed contractor and therefore barred from bringing suit.[12] However, the Court finds all of the cited cases are distinguishable. First, all of the cases involved unlicensed businesses that were performing work while *physically present* within California. In this action, there is nothing in the Amended Complaint to show that Plaintiff was physically present within California to render any of its services. Second, all of these cases involved the provision of onsite services by the unlicensed

---

[10] *Id.*

[11] *Id.*

[12] *Sheble v. Turner*, 117 P.2d 23 (Cal. Ct. App. 1941) (real estate owner barred from bringing suit over land development deal, because she was neither licensed as a contractor nor real estate broker); *Lewis & Queen v. N.M. Ball* Sons, 308 P.2d 713 (Cal. 1957) (unlicensed subcontractor denied relief after excavating a highway and renting out excavating equipment); *Cash v. Blackett*, 196 P.2d 585 (Cal. Ct. App. 1948) (unlicensed contractor denied relief after constructing a nightclub for defendants); *Hydrotech Sys., Ltd. v. Oasis Waterpark*, 803 P.2d 370 (Cal. 1991) (unlicensed business denied relief after designing and constructing a wave pool within a waterpark); *Vallejo Dev. Co. v. Beck Dev. Co.*, 29 Cal. Rptr. 2d 669 (Cal. Ct. App. 1994) (unlicensed firm denied relief for having managed and supervised construction work at a planned community); *Currie v. Stolowitz*, 338 P.2d 208 (Cal. Ct. App. 1959) (unlicensed firm denied relief for contract to install plumbing in hospital); *Franklin v. Nat C. Goldstone Agency, 204* P.2d 37 (Cal. 1949) (unlicensed interior decorator denied recovery for contract to paint and carpet an office); *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*, 115 P.3d 41 (Cal. 2005) (unlicensed subcontractor denied relief for structural and ornamental steel construction at a hotel).

4

businesses. Again, there is nothing in the Amended Complaint regarding Plaintiff providing any services onsite.[13] Third, none of these cited cases presented a situation akin to the current case: where an out-of-state business simply manufactured building supplies and then shipped these supplies to a construction site in California, where the supplies were to be installed by a different contractor. Thus, none of the cases are applicable to the present situation.

Instead, the Court agrees with Plaintiff that its activities fall within the plain language of section 7052, which specifically excludes from the definition of a contractor, "any person who only furnishes materials or supplies without fabricating them into, or consuming them in the performance of, the work of the contractor."[14]

In a similar case, *Steinbrenner v. Waterbury Construction Co.*,[15] the plaintiff was an unlicensed mill worker who fabricated and shipped millwork and cabinets to a general contractor, which were then installed by the general contractor into one of its projects. The California courts applied the Section 7052 exemption and found that the defendant failed to meet its burden to show that the plaintiff was a contractor where he only furnished supplies and materials to the defendant. The California Court of Appeal noted that "[a]ll necessary fabrication was done at plaintiff's plant and delivered to the construction site where all installation" was performed by the general contractor.[16] That court also relied on the principle that a business is a supplier and not a

---

[13]Nor do Defendants argue that Plaintiff provided any installation services on site in California.

[14]*Id.*

[15]212 Cal. App. 2d 661 (Cal. Ct. App. 1963).

[16]*Id.* at 663

subcontractor "unless he makes a substantial 'on the site' contribution."[17] Thus, the plaintiff was outside the classification of a "contractor" and was not required to be licensed.[18]

In the present case, as in *Steinbrenner*, even though the supplies were custom produced and delivered by the supplier to the job site, they were not installed by the supplier-plaintiff. Considering the allegations in the Amended Complaint to be true, Defendants have not shown that Plaintiff is a contractor under California law. Therefore, Defendants have not shown that Plaintiff is prevented under California law from bringing this action.

2. *Utah Law*

Defendants suggest that Utah law would also bar Plaintiff from recovering, as the Utah statute states that a contractor may not "commence or maintain any action in any court of the state for collection or compensation for performing any act for which a license is required by this chapter without alleging and proving that the licensed contractor . . . was appropriately licensed when the contract sued upon was entered into, and when the alleged cause of action arose."[19] The statute defines "contractor" as "any person who for compensation other than wages as an employee undertakes any work in the construction, plumbing, or electrical trade for which licensure is required under this chapter."[20] This definition of "contractor" does not include the services rendered by Plaintiff, namely the manufacture and shipment of building supplies.

---

[17]*Id*. at 664.

[18]*Id.* at 666.

[19]Utah Code Ann. § 58-55-102(12)(a) (2010).

[20]*Id.*

More importantly, the Utah statute, like the California statute, provides a licensing exemption applicable to "a person engaged in the sale of . . . personal property that by its design or manufacture may be attached, installed, or otherwise affixed to real property who has contracted with a person, firm, or corporation licensed under this chapter to install, affix, or attach the property."[21] In the current case, Plaintiff falls within the category of businesses granted a licensing exemption, as Plaintiff's involvement with Defendants' project was limited to the sale of paneling that was shipped to California.

Therefore, Defendants have failed to meet their burden to show that Utah law requires Plaintiff to be a licensed contractor, and accordingly have failed to show that Utah law bars Plaintiff from bringing this suit.

 3. *Conclusion*

A review of statutory and case law in both California and Utah reveals that the two states' licensing requirements for contractors do not apply to Plaintiff because Plaintiff did not act as a contractor within their statutory definitions. Instead, Plaintiff's actions bring it within the states' statutory definitions of a "supplier," and both states provide licensing exemptions for suppliers. Thus, neither California nor Utah bars Plaintiff from filing suit to recover damages in this case. Accordingly, the Court denies Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted under the licensing statutes.

---

[21]*Id*. § 58-55-305(1)(f).

B. PERSONAL JURISDICTION

Defendants argue that entering into a single contract with Plaintiff is insufficient to establish minimum contacts in Utah where they have never had a physical presence in Utah and the construction project is located in California. Defendants further argue that regardless of a finding of minimum contacts, the norms of "fair play and substantial justice" under due process would be violated if they are required to defend themselves in Utah.

When assessing personal jurisdiction under Rule 12(b)(2), the Court may consider matters outside of the pleadings without converting the motion to dismiss to one for summary judgment.[22] "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant."[23]

> "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." The plaintiff may carry this burden "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." "All factual disputes are resolved in favor of the plaintiff when determining the sufficiency of this showing." "To defeat a prima facie showing of jurisdiction, the defendant must demonstrate that the presence of some other considerations would render jurisdiction unreasonable."
>
> "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." [24]

---

[22] Fed. R.Civ. P. 12(d) (providing for treatment of motions under subsections (b)(6) and (c) as ones for summary judgment under Rule 56 when matters outside the pleadings are presented and considered by the court).

[23] *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).

[24] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (quoting *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008); *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007);

Under Utah's long-arm statute, "any set of circumstances that satisfied due process will also satisfy the long-arm statute."[25] As the Tenth Circuit has explained, the "jurisdictional inquiry in Utah diversity cases is reduced to a single question: did the defendants have sufficient 'minimum contacts' with the state of Utah to establish personal jurisdiction over them?"[26]

In support of their argument for dismissal, Defendants point to several factors, including that Defendants: 1) have principal places of business in California, 2) have no bank accounts in Utah; 3) do not advertise in Utah, 4) do not maintain any points of contact in Utah, 5) have no employees residing in Utah, 6) do not own or rent any property in Utah, 7) do not derive any business in Utah, and 8) have never been the subject of a lawsuit in Utah.[27] Defendants also argue that personal jurisdiction is lacking, because the construction project from which Plaintiff's claims arise is located in California. Defendants further argue that a single contract with a Utah resident is insufficient to establish minimum contacts.

This Court finds that under the circumstances of this case, the exercise of personal jurisdiction over Defendants is reasonable for the following reasons. First, Defendants purposefully availed themselves of the Utah forum when they entered into a contract with Plaintiff in Utah for the purchase of a product manufactured in and shipped from Utah. Therefore, Defendants consciously

---

*Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009)) (some alterations omitted; additional quotations and alterations omitted in *Bartile Roofs*).

[25]*Rusakiewicz*, 556 F.3d at 1100 (construing Utah's long-arm statute Utah Code Ann. § 78B-3-201(3) (1953) and quoting *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998)).

[26]*Fidelity & Cas. Co. of N.Y. v. Philadelphia Resins Corp.*, 766 F.2d 440, 442 (10th Cir. 1985).

[27]Docket No. 6, Ex. A. (Tavitian Decl. ¶¶ 5-11).

directed commercial activity towards the forum state and this "transaction of business" with the forum state constitutes enumerated activity that brings Defendants within Utah's "long-arm" jurisdiction.[28]

In a similar case, *SII MegaDiamond Inc. v. American Superabrasives Corporation*,[29] the Utah Supreme Court held that "the formation of a contract within a state involving a state resident qualifies as transaction of business for purposes of the long-arm statute."[30] *SII MegaDiamond* concerned an East Coast business that failed to pay the invoices on industrial diamonds it ordered from a Utah business.[31] The Utah Court found that the defendant transacted business within Utah, despite never having actually been present within the state, because the defendant "purposefully directed" its efforts toward a Utah entity when it ordered products from the plaintiff.[32] It also found that the failure to deliver payment to the plaintiff's business in Utah was actionable injury providing the required nexus to the forum state.[33]

Second, the cause of action in this case, a contractual breach, arises from Defendants' business activity directed towards a Utah resident operating within the state. As in *SII MegaDiamond*, there were Utah contacts in the case because the defendant's "orders were received

---

[28] *See* Utah Code Ann. § 78B-3-205(1) (2010).

[29] 969 P2d at 430.

[30] *Id.* at 434.

[31] *Id.* at 432.

[32] *Id.* at 435.

[33] *Id.* at 434.

in Utah, filled in Utah, and invoiced in Utah, and the products were shipped from Utah."[34] Thus, the cause of action occurred in Utah and arose out of the purposeful actions of the Defendants.

Lastly, Defendants fail to meet their burden of showing that this Court's exertion of personal jurisdiction would not comport with due process. Defendants make several arguments for why the exercise of personal jurisdiction over them in Utah would offend due process. First, Defendants argue that they will be burdened if they have to defend in this Court because they will have to travel from California to appear in court. However, Defendants do not show why their burden would be greater than any other out-of-state defendant, and as such Defendants have not made the case that this burden is extraordinary or unduly harsh.

Second, Defendants argue that California has a greater interest in adjudicating this dispute because the construction site is in California and any harm would have occurred in California. This argument is not persuasive because the alleged harm in this case—Plaintiff's failure to receive payment for supplies ordered from a Utah supplier—took place in Utah and not California. Thus, Utah has the greatest interest in adjudicating this case because the alleged harm occurred in Utah to one of its residents.

Third, Defendants argue that Plaintiff could receive convenient and effective relief in California, because California laws are similar to Utah's and would not create undue hardship on Plaintiff. However, an evaluation of the most convenient and effective forum for Plaintiff leads inherently to Utah, since Plaintiff's offices and personnel are located in Utah and the parties' contract specifies that Utah law applies.

---

[34] *Id.*

Fourth, Defendants argue that the interstate judicial system would be most efficiently served by adjudication in California because the project site is located there, and therefore most evidence and fact finding would emanate from California. Again, this argument is premised on the mistaken argument that the cause of action relates to occurrences at the construction site itself, rather than the failure of Plaintiff to receive payment in Utah.

Finally, Defendants claim that the exercise of jurisdiction in Utah will "trample on"[35] California's public policy interest in discouraging the operation of unlicensed contractors. For the reasons stated above, the California's requirement for contractors to be licensed is not applicable to this case.

Accordingly, Defendants have failed to meet their burden of demonstrating a denial of due process or fundamental unfairness if this case were maintained in Utah. Plaintiff has shown personal jurisdiction over Defendants.

C.  Venue

In the alternative, Defendants seek to dismiss for "improper venue" pursuant to Federal Rule of Civil Procedure 12(b)(3). Defendants mainly argue that venue is proper only in California because the construction site is the scene of any contractual obligations between the parties.

Pursuant to 28 U.S.C. § 1391(a), venue in a civil action under diversity jurisdiction may be found in (1) "a judicial district where any defendant resides, if all defendants reside in the same

---

[35] Docket No. 5, at 12.

State;" (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; . . . ."[36]

The Court finds that venue is proper on its face under subsection (2) of § 1391(a). The cause of action in this matter accrued when Plaintiff allegedly failed to receive compensation at its Utah-based offices for the supplies it manufactured and provided to Defendants. The order was placed in Utah with a Utah company. Thus, a "substantial part of the events or omissions giving rise to the claim" occurred in Utah and venue is proper in Utah.

Further, Sunset is bound by the forum selection clause in the contract with Plaintiff. That clause provides "[a]ny legal disputes *shall* be resolved in Salt Lake County, State of Utah, and shall be governed by Utah law."[37] The Tenth Circuit Court of Appeals has affirmed the "principle that forum selection clauses are 'prima facie valid and should be enforced' unless shown to be unreasonable."[38] The Court finds that the forum selection clause is mandatory.[39] Defendants do not challenge the validity of the forum clause, other than to argue that because Elite was not a signatory to the contract, it is not bound by the terms of the forum clause. Because Defendants do not challenge the reasonableness of the forum clause, the Court will enforce the clause as to Sunset.

---

[36] 28 U.S.C. § 1391(a)(2).

[37] Docket No. 6, Ex. A. at 5 (emphasis added).

[38] *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1344 (10th Cir. 1992) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

[39] See *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 499 (10th Cir. 2002) (noting that "where venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive") (qutoing *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)).

13

## IV. ORDER

Based upon the foregoing, it is therefore

ORDERED that Sunset's and Elite's Motion to Dismiss (Docket No. 4) is DENIED.

DATED   February 24, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge